IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ISAAC HALL,                          )
                                     )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    1:11CV428
                                     )
CAROLYN W. COLVIN,[1]                )
Acting Commissioner of Social Security, )
                                     )
          Defendant.                 )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Isaac Hall ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

The Social Security Administration ("SSA") found Plaintiff entitled to Disability Insurance Benefits ("DIB") as of February 15, 2007, based upon an application dated July 3,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2007. (Tr. at 420, 454.)[2] However, the present case involves Plaintiff's previous DIB application. (Tr. at 420.) Plaintiff filed the application in question on March 19, 2003, alleging a disability onset date of February 1, 2001. (Tr. at 67-69.) His application was denied initially (Tr. at 52) and upon reconsideration (Tr. at 53-55). Plaintiff subsequently requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. at 64), which took place on November 29, 2005 (Tr. at 24-51). At that time, Plaintiff amended his alleged onset date to March 19, 2003. (Tr. at 100). The hearing resulted in an unfavorable decision, (Tr. at 10-20), which the Appeals Council upheld (Tr. at 5-7). However, Plaintiff filed a civil action in this Court (1:08CV354), and the Commissioner moved to remand the case for further proceedings, including vocational expert testimony. (Tr. at 506-18.)

On September 28, 2010, Plaintiff, his attorney, and a vocational expert attended Plaintiff's hearing on remand. (Tr. at 420-21, 898-933). The ALJ ultimately determined that, between March 19, 2003 and February 14, 2007, Plaintiff was not disabled within the meaning of the Act (Tr. at 428-29) and, on March 30, 2011, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 409-11).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant last met the insured status requirements of the Social Security Act through September 30, 2010.
>
> 2. The claimant did not engage in substantial gainful activity (SGA) during the period in question[,] March 19, 2003, the alleged onset date, through February 14,

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #9].

2007, the date from which he was previously determined to be disabled (20 CFR 404.1571 *et seq.*).

. . . .

3. During the period in question, the claimant had the following severe impairments: history of per[n]icious anemia, history of hepatitis B, low back disorder, and depression (20 CFR 404.1520(c)).

. . . .

4. The claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, I find that, during the period in question, the claimant had the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c), with no lifting, carrying, pushing or pulling more than 25 pounds frequently and 50 pounds occasionally; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs; no more than frequent balancing, stooping, crouching, kneeling or crawling; and avoidance of concentrated exposure to moving machinery or unprotected heights. He was also limited to performing simple, routine, repetitive tasks in a low-stress setting (requiring no more than occasional decision-making and no more than occasional changes in the work setting) with no production rate or paced work (such as would be done on an assembly line).

(Tr. at 423-25.)

The ALJ then considered the vocational expert's testimony regarding the above residual functional capacity ("RFC") and determined that, during the period in question, Plaintiff was capable of performing his past relevant work as a hospital cleaner. (Tr. at 428.) Plaintiff therefore was not under a "disability," as defined in the Act, prior to February 15, 2007. (Tr. at 429.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before

4

[the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

5

whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

6

[the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: history of pernicious anemia, history of hepatitis B, low back disorder, and depression. The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 423.) Accordingly, he assessed Plaintiff's RFC and determined that, during the period in question, Plaintiff retained the ability to perform medium work with further limitations to simple, routine, repetitive tasks in a low-stress setting with no production line or paced work. (Tr. at 424-25.) Because the ALJ determined at step four that the requirements of Plaintiff's past relevant work as a hospital cleaner did not exceed his RFC, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 428-29.)

Plaintiff now argues that the ALJ erred in (1) evaluating the treating physician opinion of Dr. Thomas Holland, (2) assessing Plaintiff's credibility, and (3) identifying Plaintiff's past relevant work as consistent with his RFC. Defendant contends otherwise and urges that substantial evidence supports the ALJ's decision.

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

A.     Dr. Holland's Medical Source Statement

In his medical source statement, completed in December 2005, Dr. Holland opined that Plaintiff's pain was often severe enough to interfere with his attention and concentration. However, he declined to offer an opinion as to whether Plaintiff was permanently disabled until further steps were taken to control Plaintiff's pain. Plaintiff now contends that the ALJ improperly considered Dr. Holland's opinion in two respects. First, Plaintiff argues that the ALJ was required to mention Dr. Holland's "materially favorable" impression of his mental limitations in his decision and include such a limitation in his hypothetical at step five. (Pl.'s Br. [Doc. #15] at 10.) Second, Plaintiff contends that 20 C.F.R. § 404.1512(e) required the ALJ to recontact Dr. Holland for further clarification of Plaintiff's physical abilities.

Plaintiff frames these allegations as a challenge based on the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Accordingly, error may result when an ALJ accords less than controlling weight to a treating physician's opinion without a sufficient reason for doing so under the regulations. In the present case, however, nothing in the ALJ's decision suggests that the ALJ discounted Dr. Holland's opinion in any way. In fact, the decision

recounts the content of Dr. Holland's medical source statement and treatment notes favorably, and at great length. (Tr. at 425-27.)

Although the decision does not specifically mention Dr. Holland's finding that, as of December 2005, Plaintiff's pain was often (but not frequently) severe enough to interfere with attention and concentration (see Tr. at 384), this omission alone does not constitute reversible error. An ALJ need not discuss every piece of evidence in making his RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). Rather, he must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford [Plaintiff] meaningful review of the SSA's ultimate findings." Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003). While "[a]n ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required," as does a selective discussion of "only that evidence that favors [the ALJ's] ultimate conclusion," Diaz, 55 F.3d at 307 (citing Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994)), neither of these situations exist in the present case.

Specifically, Dr. Holland's findings in December 2005 clearly anticipated future potential improvement in Plaintiff's pain control and reduction in his associated limitations, and Dr. Holland therefore concluded that he could not form an opinion as to Plaintiff's permanent disabilities at that time. More recent medical records from Dr. Holland as well as Plaintiff's other physicians, many of which are chronicled in the ALJ's decision, reveal that Plaintiff's pain level did indeed improve with ibuprofen as well as with prescribed psychiatric medication and care. (Tr. at 426-28, 615-16.) Even given these improvements, the ALJ agreed with

9

psychological consultant Steven Salmony, Ph.D., that Plaintiff had "moderate difficulties maintaining concentration, persistence or pace." (Tr. at 424, 427.) Dr. Salmony found that, with such limitations, Plaintiff "was capable of understanding and remembering simple 3-step instructions" and "sustaining attention and concentration for the completion of simple, routine, repetitive tasks." These restrictions appear in Plaintiff's RFC and corresponding hypothetical questions as a limitation "to performing simple, routine, repetitive tasks in a low-stress setting (requiring no more than occasional decision-making and no more than occasional changes in the work setting) with no production rate or paced work (such as would be done on an assembly line)." (Tr. at 424-25.) Thus, the extensive RFC limitations clearly encompass any limitations in Plaintiff's concentration.

Plaintiff's contention that 20 C.F.R. § 404.1512(e) required the ALJ to recontact Dr. Holland is equally flawed. This regulation required the Social Security Administration ("SSA") to "seek additional evidence or clarification from [a claimant's] medical source when the report from [that] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."[6] However, this provision only required the Commissioner to recontact a treating physician if the evidence was inadequate to determine whether the claimant was disabled. See White v. Massanari, 271 F.3d 1256, 1261 (10th Cir. 2001) ("It is the inadequacy of the record, rather than the rejection of the treating physician's

---

[6] Section 404.1512(e), as quoted here and relied upon by Plaintiff, was effective at the time of Plaintiff's administrative proceedings. However, that provision was subsequently deleted, and no analogous subsection appears in more recent revisions of the SSA regulations. See 77 Federal Register 10651 (Feb. 23, 2012).

10

opinion, that triggers the duty to recontact that physician."); Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) ("The regulations clearly state that an ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability."). In this case, the information from Dr. Holland was not inadequate, as the December 2005 opinion notes that additional steps for pain control must be taken before an opinion could be rendered, and Dr. Holland's subsequent medical record reflect those additional steps. For example, Dr. Holland's treatment notes from May 2006 include the assertion that Plaintiff would be much better off pursuing a job than "continu[ing] to pursue disability and staying at home without working all day." (Tr. at 616.) The same records reflect significant improvement in Plaintiff's condition and the expectation of continued improvement, i.e., reduced pain, with an increased dosage of antidepressants. (Tr. at 615-16.) Moreover, there is no ambiguity or inadequacy in the record overall, as no medical sources suggested that Plaintiff was limited to less than medium level work, let alone disabled, by his physical impairments. Thus, there was not any need to recontact Dr. Holland, and the ALJ's failure to do so was not error.

    B.    Credibility

Plaintiff next challenges the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. In particular, Plaintiff contends that the ALJ failed to properly assess his pain allegations under the framework set out in Craig, 76 F.3d at 594-95. Craig provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence

11

showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about his pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Craig, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff alleged pain as a result of his documented back disorder and other impairments, and the ALJ determined at step one of the Craig analysis that these conditions "could reasonably be expected to cause [his] alleged symptoms." (Tr. at 427.) However, the ALJ found at step two that substantial evidence failed to support the intensity and persistence of the pain alleged by Plaintiff or the extent to which his pain limited his ability to work. (Id.) Therefore, the ALJ ultimately concluded that Plaintiff's pain was not disabling.

Plaintiff now claims that the ALJ's analysis "ignored [his] testimony almost entirely" rather than according it "great weight" as required by Combs v. Weinberger, 501 F.2d 1361, 1362-63 (4th Cir. 1974). However, "great weight is afforded to subjective evidence [only] when

13

it is either uncontradicted or supported by substantial evidence." Felton-Miller v. Astrue, 459 F. App'x 226, 229 n.1 (4th Cir. 2011). Neither of these situations exist in the present case.

In this regard, the ALJ's decision recounts that Dr. Nathan Strahl, an impartial medical expert who submitted interrogatories in Plaintiff's case, "noted that, despite the voluminous record, one medical report stood out - that of a consultative examiner[, Dr. Linda Bissonette,] who reported in January 2004 that [Plaintiff's] subjective complaints were inconsistent with his physical exam." (Tr. at 421, 423, 841.) The ALJ recounts Dr. Bissonette's findings as follows:

> Dr. Bissonette reported, during her January 2004 exam, [that Plaintiff] displayed a left leg limp and moved slowly when entering the exam room, getting in and out of a chair, and getting on and off the exam table. However, when he exited the office, he was observed to move at a much brisker pace and his gait had returned to normal. She noted that her exam was difficult because he was uncooperative and that his complaints were not consistent with her objective findings.

(Tr. at 428.) A second consultative examiner, Dr. Sam Cohen, similarly noted in September 2007 that Plaintiff "had a slow and shuffling gait walking in the exam room but had a normal gait when he was observed in the parking lot crossing the street from the clinic." (Id.) Relying on these findings, the ALJ determined that Plaintiff's "inconsistent behaviors and lack of cooperation during examination . . . undermine his credibility." (Id.)

The decision further notes (1) extensive evidence of Plaintiff's poor compliance with his treatments, including failure to take prescribed medications and show up for scheduled appointments (Tr. at 427, 651, 657, 658, 659, 660, 669, 672, 679, 680, 756), and (2) Plaintiff's continued part-time work during "every year during the period in question," which included "doing lawn work for 20 hours a week" (Tr. at 423, 427, 546, 653, 682, 687). In May 2006, Plaintiff also "indicated that he also had a ministry and was umpiring in various sports." (Tr.

14

at 427, 681.) The ALJ concluded that Plaintiff's "poor compliance with treatment and his activities are not consistent with his allegations of debilitating symptoms." (Tr. at 427.)

In sharp contrast to the volume of evidence undermining Plaintiff's credibility, the record contains very little objective evidence supporting Plaintiff's pain allegations. Testing of Plaintiff's spine showed only mild degenerative changes and no decrease in strength (Tr. at 425, 156, 382, 550, 699-702), and few objective findings support his claims of knee pain, (Tr. at 425, 582, 615). Similarly, despite continuing complaints of severe chest pain, Plaintiff's chest x-rays, ECG testing, a CT scan, a heart catheterization, and a cardiac MRI showed minimal abnormalities, leading Dr. Holland to report that Plaintiff's pain appeared to be largely psychiatric in origin. (Tr. at 382, 384, 423, 426, and 615-16.) Plaintiff's pain improved significantly through the use of antidepressants, further supporting Dr. Holland's hypothesis. (Tr. at 616.) Moreover, the improvement of Plaintiff's pain through the use of both antidepressants and ibuprofen further undermines his allegations of disabling pain. Overall, the substantial evidence in this case clearly supports the ALJ's finding that the intensity, persistence, and limiting effects of the pain alleged by Plaintiff were less severe than he alleged.

    C.    Past Relevant Work

Finally, Plaintiff argues that the ALJ erred at step four by finding that Plaintiff could return to his past work as a hospital cleaner, which is identified in the Dictionary of Occupational Titles ("DOT") as involving a reasoning level of two on the DOT's six-level scale. Plaintiff contends that his limitation to "simple, routine, repetitive tasks" precludes him from performing jobs above reasoning level one, the lowest level available. (Pl.'s Br. at 11.) A job

15

rated at reasoning level one requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702. In comparison, a job rated at reasoning level two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." A level two job also requires the worker to "[d]eal with problems involving a few concrete variables in or from standardized situations." Id.

Plaintiff cites a number of non-binding cases holding that a reasoning level of two is *per se* inconsistent with a limitation to simple, routine, and repetitive tasks. (Pl.'s Br. at 12-13.) However, the majority of the courts to have considered the issue instead have found that such holdings grossly oversimplify the relationship between the SSA's reasoning scale and the far more nuanced DOT scale, and have concluded that limitation to simple, routine, and repetitive tasks does not conflict with a reasoning level of two. In Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005), the court described the differences in the two scales as follows:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00(C)(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one-or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . apprehend the most abstruse classes of concepts" at level six). To equate the Social Security regulations' use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are all encapsulated within the regulations' use of the word "detail." Such a

"blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

403 F. Supp. 2d at 984.

Although the Fourth Circuit has yet to rule on this issue, this Court, and many district courts within the Circuit, have concurred with the Meissl court in finding that a plaintiff limited to work involving simple and repetitive tasks can perform jobs with a reasoning level of two. See, e.g., Marshall v. Colvin, No. 13-1585, 2014 WL 6066008 (D. Md. Nov. 12, 2014); Chestnut v. Colvin, 2014 WL 2967914 (W.D. Va. June 30, 2014); Snider v. Colvin, No. 7:12cv539, 2014 WL 793151 (W.D. Va. Feb. 26, 2014); Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, at *8-9 (M.D.N.C. June 24, 2013); Vallejo v. Astrue, Civil No. 3:10-CV-00445, 2011 WL 4595259, at *13-14 (W.D.N.C. August 4, 2011); Lindsey v. Astrue, No. 9:10-1079, 2011 WL 2214779, at *3-4 (D.S.C. June 7, 2011); Taylor v. Astrue, No. 5:10-CV-263-FL, 2011 WL 1599679, at *12-13 (E.D.N.C. March 23, 2011). As one of these courts observed, "[a]lthough reasoning level two requires the understanding to carry out detailed instructions, 'it specifically caveats that the instructions would be uninvolved - that is, not a high level of reasoning.'" Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *7 (W.D.N.C. August 24, 2010) (further noting that "work that requires 'commonsense understanding' is simple. Work that requires 'uninvolved written or oral instructions' is simple and routine") (internal quotations omitted). Accordingly, the performance of jobs with a reasoning level of two does not, as Plaintiff suggests, conflict with a limitation to simple, routine, and repetitive tasks.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #14] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #16] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 28th day of January, 2015.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge